**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

PHILLIP THOMPSON,        )
                                   )
     Movant,           )
                                   )     Cv. No. 2:13-cv-02737-JPM-dkv
v.                               )     Cr. No. 2:10-cr-20010-JPM-dkv-1
                                   )
UNITED STATES OF AMERICA,    )
                                   )
     Respondent.    )

---

**ORDER ADDRESSING PENDING MOTIONS,**
**DENYING MOTION PURSUANT TO 28 U.S.C. § 2255,**
**DENYING CERTIFICATE OF APPEALABILITY,**
**CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH**
**AND DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

---

Before the Court is a Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant Phillip Thompson ("Thompson"), Bureau of Prisons register number 23391-076, who is currently incarcerated at the Federal Correctional Institution Medium in Yazoo City, Mississippi. (§ 2255 Mot., *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 1; *see also* Notice of Change of Address, *id.*, ECF No. 20.) For the reasons stated below, the Court DENIES the § 2255 Motion.

## I.    PROCEDURAL HISTORY

### A.    Criminal Case Number 10-20010

On January 13, 2010, a federal grand jury returned a five-count indictment, charging that on or about December 17, 2009, Thompson, a convicted felon: (1) robbed Trust One Bank, 717 South White Station, Memphis, Tennessee, in violation of 18 U.S.C. § 2113(a) ("Count One");

(2) knowingly used and carried a firearm in the commission of the robbery, in violation of 18 U.S.C. § 924(c) ("Count Two"); (3) robbed Cadence Bank, 519 South Mendenhall, Memphis, Tennessee, in violation of 18 U.S.C. § 2113(a) ("Count Three"); (4) knowingly possessed a Hi-Point rifle, model 995, 9mm, serial number B98030, in violation of 18 U.S.C. § 922(g) ("Count Four"); and (5) knowingly possessed ten live rounds of 9mm caliber ammunition and five live rounds of 8mm caliber ammunition, in violation of 18 U.S.C. § 922(g) ("Count Five"). (Indictment, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 13.) The factual basis for the charges is stated in the presentence investigation report ("PSR"):

### **The Offense Conduct**

4.      According to the investigative file, on December 17, 2009, at approximately 8:35 a.m. **Phillip Thompson** entered Trust One Bank, located at 717 S. White Station in Memphis, TN, carrying a *Hi-Point 9mm rifle, model 995, serial number B98030*, and wearing a black sweatshirt with a hood cinched around his face. **Thompson** ordered three bank tellers to put their hands up. He first pointed the firearm at Stephanie Ballard and demanded money from her cash drawer. **Thompson** then pointed the rifle at Lauren Tomlinson and demanded money from her drawer. **Thompson** warned both tellers not to give him a dye pack or tracking devices. During the robbery, Ashley Wheeler was standing behind her desk with her hands raised in the air. **Thompson** fled the bank and witnesses observed him driving southbound on White Station. The total loss from the bank robbery was ***$4,172.00***.

5.      At approximately 8:48 a.m., **Thompson** entered Cadence Bank, located at 591 South Mendenhall, wearing the same black hooded sweatshirt, and approached bank teller, Denise Chaudoin. He pointed a Brun[]i 8 mm blank firing handgun at her and demanded money from her cash drawer. Ms. Chaudoin complied with his demands, after which he immediately fled the bank with the money. The total loss from this robbery was *$3,643.00*.

6.      Witnesses had observed **Thompson** fleeing from both banks in the same vehicle. Investigators subsequently issued a citywide broadcast for **Thompson's** vehicle. Officers observed the vehicle at Poplar and East Parkway and attempted to conduct a traffic stop; however, **Thompson** refused to stop and accelerated his speed. **Thompson** turned onto Evergreen, leaned out of his vehicle and fired approximately 15 shots at

the officers with the assault rifle. **Thompson** eventually crashed into a building at Chelsea and Evergreen. He fled on foot but was located a short distance from the crash and immediately arrested at approximately 11:55 a.m.

. . . .

9.    A search warrant was obtained and executed for **Thompson's** vehicle. Officers recovered: a Hi-Point rifle; a Bruni simunition handgun; two []9 mm rounds; five []8 mm rounds; *$7,790*; a black hooded sweatshirt; a pair of Air Jordan tennis shoes; a Sam's card and deposit slips bearing **Thompson's** name; a cell phone; and an iPod Touch.

10.   Trust One Bank and Cadence Bank are insured by the Federal Deposit Insurance Corporation. . . . .

11.   The firearm was not manufactured in the State of Tennessee and therefore traveled in interstate commerce. **Thompson** was a convicted felon at the time of his arrest.

(PSR ¶¶ 4-6, 9-11.)

On October 20, 2011, Thompson pleaded guilty to all five Counts. (Min. Entry, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 40; Order on Change of Plea, *id.*, ECF No. 41.) Sentencing began on June 20, 2012 (Min. Entry, *id.*, ECF No. 55) and resumed on July 19, 2012, during which the Court sentenced Thompson to a term of imprisonment of twenty years to be followed by a three-year period of supervised release as to Count One; a term of imprisonment of ten years to be followed by a five-year period of supervised release as to Count Two; a term of imprisonment of twenty years to be followed by a three-year period of supervised release as to Count Three; and a term of imprisonment of ten years to be followed by a three-year period of supervised release as to each of Counts Four and Five (Min. Entry, *id.*, ECF No. 57).[1] Judgment was entered on July 20, 2012. (J. in a Criminal

_____

[1] The 2011 edition of the *Guidelines Manual* was used to calculate Thompson's sentencing range. (PSR ¶ 15.) Counts One, Four, and Five were grouped together pursuant to §3D1.2(c). (*Id.* ¶ 16.) When so grouped, the highest offense level of the counts in the group is

Case, *id.*, ECF No. 59.) The twenty-year sentences for Counts One and Three were to be served concurrently with each other, but consecutive to the ten-year sentences for Counts Four and Five, which were also to be served concurrently with each other and consecutive to the ten-year sentence for Count Two, for a total term of imprisonment of forty years. (*Id.* at 3.) All periods of supervised release were to be served concurrently with each other for a total term of five years. (*Id.* at 4.) Thompson filed a notice of appeal on July 23, 2012. (Notice of Appeal, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 62.) The Sixth Circuit affirmed the district court's judgment on July 29, 2013. *United States v. Thompson*, 531 F. App'x 549 (6th Cir. 2013) (per curiam).

---

used. *See* § 3D1.3(a). Pursuant to § 2K2.1(c)(1)(A), cross-referencing § 2X1.1 and § 2A2.1 of the United States Sentencing Guidelines ("U.S.S.G."), the base offense level for unlawful possession of a firearm is 27 if the defendant used or possessed any firearm or dangerous weapon in connection with the commission of an attempted murder. (PSR ¶ 17.) Thompson received a six-level official victim enhancement because he had fired at a law enforcement officer while fleeing, U.S.S.G. § 3A1.2, and a two-level enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2, resulting in a subtotal offense level of 35. (PSR ¶¶ 19, 21-22.) With respect to Count Two, pursuant to U.S.S.G. § 2K2.4(b), the guideline sentence is the minimum term of imprisonment required by statute, consecutive to any other sentence imposed. (*Id.* ¶ 23.) In Thompson's case, the minimum is ten years. (*Id.*; *see* also 18 U.S.C. § 924(c).) With respect to Count Three, pursuant to U.S.S.G. § 2B3.1(a), the base offense level for robbery is 20. (PSR ¶ 24.) Thompson received a two-level enhancement for taking the property of a financial institution, U.S.S.G. §2B3.1(b)(1); a seven-level enhancement for discharging his firearm, U.S.S.G. § 2B3.1(b)(2)(A); a six-level official victim enhancement because he had fired at a law enforcement officer while fleeing, U.S.S.G. § 3A1.2; and a two-level enhancement for reckless endangerment during flight, U.S.S.G. § 3C1.2, resulting in a subtotal offense level of 37. (PSR ¶¶ 25-26, 28, 30, 31; *see also* Sentencing Hr'g Tr. 113:25-114:2, July 19, 2012, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 68.) Taking the greatest adjusted offense level of 37, Thompson received another two-level multiple-count enhancement pursuant to U.S.S.G. § 3D1.4, resulting in a total offense level of 39. (PSR ¶¶ 32-35, 37, 39; *see also* Sentencing Hr'g Tr. 114:9-12, July 19, 2012, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 68.) Thompson did not receive any reduction for acceptance of responsibility. (Sentencing Hr'g Tr. 122:14-23, July 19, 2012, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv-1 (W.D. Tenn.), ECF No. 68.) Given Thompson's criminal history category of III (PSR ¶ 47), the guideline sentencing range was 324-405 months. (*2011 Guidelines Manual*, Ch. 5, part A – Sentencing Table.)

**B.      Civil Case Number 13-2737**

On September 23, 2013, Thompson filed a *pro se* Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion"). (§ 2255 Mot., *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 1.) The motion presented the following claims: (1) "Ineffective assistance of couns[el] during and before guilty plea hearing" (§ 2255 Mot. at 5, *id.*, ECF No. 1); and (2) "Ineffective assistance of appellate counsel" (*id.* at 6).

On November 19, 2013, Thompson filed a motion to amend his § 2255 Motion with two additional claims: (3) "Ineffective assistance of counsel for failing to object to the rule 11 violation which violated due process and resulted in a[n] involuntary plea" (Mot. to Amend § 2255 Mot. at 2, *id.*, ECF No. 5-1); and (4) "Ineffective assistance of counsel for failing to appeal violation of rule 11 which violated due process" (*id.* at 3).

On December 17, 2013, Thompson filed a second motion to amend his § 2255 Motion with a fifth claim: (5) "Ineffective assistance of counsel for failure to prepare during and before sentencing" (Second Mot. to Amend § 2255 Mot. at 3, *id.*, ECF No. 6).

On May 2, 2014, Thompson filed a third motion to amend his § 2255 Motion with a sixth claim: (6) "Ineffective assistance of counsel for failing to object to [M]agistrate [J]udge exercising the essential attributes of the judicial power addressed in [A]rticle III which is adjudicating and entering a judgment of guilty without being designated in violation of the [M]agistrates [A]ct and [A]rticle III of the [C]onstitution" (Third Mot. to Amend § 2255 Mot. at PageID 57, *id.,* ECF No. 8-1).

On June 16, 2014, Thompson a fourth motion to amend his § 2255 Motion with a seventh claim: (7) "Ineffective assistance of counsel for failure to object to the miscalculation of

guidelines and argue separate [] offenses" (Fourth Mot. to Amend § 2255 Mot. at PageID 62, *id.* ECF No. 9).

On July 1, 2014, the Court granted Thompson's four motions to amend his § 2255 Motion and ordered Thompson to consolidate his claims into a single pleading. (Order Granting Mots. to Amend, *id.*, ECF No. 11.) On July 8, 2014, Thompson filed a motion to correct the seventh claim he had previously added (Fifth Mot. to Amend § 2255 Mot., *id.*, ECF No. 12). On July 21, 2014, pursuant to the Court's July 1, 2014, Order, Thompson filed an amended § 2255 motion (Am. § 2255 Mot., *id.*, ECF No. 13) that included only two discrete claims: (1) "Ineffective assistance of counsel for failure to object to the guideline miscalculation, improper grouping and failure to prepare for sentencing" (Mem. in Supp. of Am. § 2255 Mot. at PageID 86, *id.*, ECF No. 13-1); and (2) "Ineffective assistance of counsel during plea negotiations resulting in loss of plea deal and prejudice by failure to object to a Rule 11(B)(2) error which resulted in a [d]ue process violation and a[n] involuntary plea" (*id.* at PageID 88).

On July 22, 2014, the Court denied as unnecessary Thompson's motion to correct his seventh claim and directed the Government to respond to Thompson's amended § 2255 Motion within twenty-eight days. (Order Den. Mot. to Amend & Directing Gov't to Respond, *id.*, ECF No. 14). On August 13, 2014, the Government filed a motion to release Thompson's trial counsel, Mr. Marty McAfee ("McAfee"), from his confidentiality obligations under the attorney-client privilege, so that the Government could obtain an affidavit of counsel with which to prepare a response to Thompson's § 2255 Motion. (Mot. to Release McAfee from Att'y-Client Privilege, *id.*, ECF No. 15.) The Court granted the Government's motion on the same day and ordered the Government to respond to Thompson's § 2255 Motion within thirty days after the filing of an affidavit from McAfee. (Order, *id.*, ECF No. 16.)

On September 22, 2014, Thompson filed a motion to amend his amended § 2255 Motion with the following claim: (3) "Counsel was ineffective for his failure to object to Magistrate Judge Claxton conducting the guilty plea hearing without a referral from the [Court] to conduct such hearing[,] . . . accepting Petitioner's plea[,] and entering an order on 10-20-2011 changing Petitioner's plea from not guilty to guilty without submitting a [R]eport and [R]ecommendation to the [Court] . . . . [i]n violation of the Magistrates Act and [e]xercising Art[.] III powers that she does not have" (Mot. to Amend § 2255 Mot. at 1, *id.*, ECF No. 17).

One week later, on September 29, 2014, Thompson filed a second amended § 2255 Motion that combined the two claims contained in his first amended § 2255 Motion and the third claim contained in his September 22, 2014, motion to amend his first amended § 2255 Motion. (Second Am. § 2255 Motion, *id.*, ECF No. 18.) On January 7, 2015, the Court granted Thompson's September, 22, 2014, motion to amend his first amended § 2255 Motion, and directed the Government to respond to Thompson's second amended § 2255 Motion within sixty days. (Order, *id.*, ECF No. 21.)

On January 15, 2015, Thompson filed a motion to compel McAfee and the Government to file an affidavit of counsel, consistent with the Court's August 13, 2014, order on the matter. (Mot. to Compel, *id.*, ECF No. 22.) The Government filed a response to Thompson's motion to compel on January 29, 2015, indicating that it had spoken with McAfee and that McAfee was preparing an affidavit of counsel, and requesting that the Court dismiss Thompson's motion to compel. (Resp. to Mot. to Compel at 1-2, *id.*, ECF No. 23.)

The Government filed its response to Thompson's second amended § 2255 Motion on March 9, 2015, and also submitted McAfee's affidavit of counsel. (Resp., *id.*, ECF No. 23; McAfee Aff., *id.*, ECF No. 25.) On April 3, 2015, Thompson filed his own affidavits

(Thompson Affs., *id.*, ECF Nos. 26, 29); a reply to the Government's response (Reply, *id.* ECF No. 27); a response to the Government's motion to dismiss his motion to compel (Resp. to Mot. to Dismiss, *id.*, ECF No. 28); and a motion requesting an evidentiary hearing pursuant to Rule 8, § 2255 Rules and appointment of counsel pursuant to 18 U.S.C. § 3006A (Mot. for Evidentiary Hr'g & Appointment of Counsel, *id.*, ECF No. 28). On April 16, 2015, Thompson filed a supplement to his reply to the Government's response, which the Court construes as a motion[2] to supplement his reply. (Suppl. to Reply, *id.*, ECF No. 30.)

On April 30, 2015, Thompson filed a motion to amend his second amended § 2255 Motion by "remov[ing] all . . . claims/subclaims except" his claims for "ineffective assistance of counsel during plea negotiations ineffective assistance of counsel for failure to object to the improper grouping of the guidelines and miscalculation of the guidelines." (Mot. to Amend Second Am. § 2255 Mot. at PageID 194, *id.*, ECF No. 31.) With his motion, Thompson enclosed a third amended § 2255 Motion. (Third Am. § 2255 Mot., *id.*, ECF No. 31-1.)

On August 10, 2015, Thompson filed another motion to supplement his reply. (Mot. to Suppl. Reply, *id.*, ECF No. 32.) On September 30, 2015, Thompson filed a motion to amend his reply and attached a proposed amended reply, which attempted to clarify the arguments presented in his April 3, 2015, reply by incorporating the supplemental materials which he previously moved the Court to include on April 16, 2015, and August 10, 2015. (Mot. to Amend Reply, *id.*, ECF No. 34; Am. Reply, *id.*, ECF No. 34-1.)

On December 23, 2015, Thompson filed a motion requesting leave for discovery, pursuant to Rule 6(a), § 2255 Rules, requesting that he be permitted to obtain documentation

---

[2] The Court construes Thompson's supplement to his reply as a motion to supplement his reply since it is not based on "any transaction, occurrence, or event *that happened after the date of the pleading to be supplemented*." *See generally* Fed. R. Civ. P. 15(d) (emphasis added).

pertaining to communications between McAfee and the Government's trial counsel: namely, a plea agreement that Thompson alleges existed prior to his sentencing hearing, and any documentation showing that the Government had given administrative approval of such a plea agreement.  (Mot. Requesting Leave for Disc., *id.*, ECF No. 35.)

On June 27, 2016, Thompson filed a motion to supplement his amended reply as to his claim of ineffective assistance of counsel during plea negotiations.  (Mot. to Suppl. Am. Reply, *id.*, ECF No. 37.)

## II.  LEGAL STANDARDS

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: '(1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid.'"  *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (quoting *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003)).

"[A] § 2255 motion 'is not a substitute for a direct appeal.'"  *Ray v. United States*, 721 F.3d 758, 761 (6th Cir. 2013) (quoting *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003)).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

"Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise these issues previously. *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 699-700 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors). Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating that he is "actually innocent." *Bousley v. United States*, 523 U.S. 614, 622 (1998).

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("§ 2255 Rules"). "If the motion is not dismissed, the judge must order the United States attorney to file an answer, motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), § 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, § 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather

than statements of fact." *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). The movant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

## III.  ANALYSIS

### A.  Motions Pending before the Court

In addition to Thompson's § 2255 Motion, the following motions are currently pending before the Court:

1. Thompson's January 15, 2015, motion to compel (Mot. to Compel, *id.*, ECF No. 22);

2. Thompson's April 3, 2015, motion for evidentiary hearing (Mot. for Evidentiary Hr'g & Appointment of Counsel, *id.*, ECF No. 28);

3. Thompson's April 16, 2015, supplement to his reply, construed as a motion to supplement (Suppl. to Reply, *id.*, ECF No. 30);

4. Thompson's April 30, 2015, motion to amend his second amended § 2255 Motion (Mot. to Amend Second Am. § 2255 Mot., *id.*, ECF No. 31);

5. Thompson's August 10, 2015, motion to supplement his reply (Mot. to Suppl. Reply, *id.*, ECF No. 32);

6. Thompson's September 30, 2015, motion to amend his reply (Mot. to Amend Reply, *id.*, ECF No. 34);

7. Thompson's December 23, 2015, motion requesting leave for discovery (Mot. Requesting Leave for Disc., *id.*, ECF No. 35); and

8. Thompson's June 27, 2016, motion to supplement his amended reply (Mot. to Suppl. Am. Reply, *id.*, ECF No. 37).

The Court must consider some of the pending motions before reaching the merits of Thompson's second amended § 2255 Motion, since some of the pending motions bear substantively on Thompson's second amended § 2255 Motion. Therefore, the Court begins with consideration of Thompson's January 15, 2015, motion to compel. The Court follows with a discussion of the standards set forth in Rule 15 of the Federal Rules of Civil Procedure, governing the permissibility of amendments to previous pleadings after such time as the limitations period expires, or an adverse party files a responsive pleading, and their application to Thompson's motions to amend his second consolidated § 2255 Motion. The Court then evaluates the merits of Thompson's § 2255 Motion and concludes with consideration of Thompson's remaining pending motions.

### 1. Motion to Compel

On January 15, 2015, Thompson filed a motion to compel McAfee or the Government to file an affidavit of counsel pursuant to the Court's August 13, 2014, order on the matter.[3] (Mot. to Compel, *id.*, ECF No. 22.) The Government filed a response on January 29, 2015, requesting that the Court dismiss Thompson's Rule 37 motion because the Court-imposed deadline by which the Government needed to file McAfee's affidavit had not yet passed. (Resp. to Mot. to

---

[3] The Court construes Thompson's January 15, 2015, motion to compel as a motion pursuant to Rule 37(a)(1) of the Federal Rules of Civil Procedure.

Compel at 1-2, *id.*, ECF No. 23.)  For the reasons set forth below, Thompson's Rule 37 motion is

DENIED AS MOOT.

### a.    Legal Standard for Rule 37 Motions

Rule 37(a)(1) of the Federal Rules of Civil Procedure provides that:

> On notice to other parties and all affected persons, a party may move for *an order compelling disclosure or discovery*.  The motion *must* include *a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action*.

Fed. R. Civ. P. 37(a)(1) (emphasis added).  "A motion to compel is appropriate only after a party

has served a request for production of documents under Rule 34 and the opposing party has

failed to respond or has interposed an objection."  *Craigmyle v. United States*, No. 11-2408-JPM-

dkv, 2012 U.S. Dist. LEXIS 174300, at *8 (W.D. Tenn. Mar. 21, 2012).  The text of Rule 37

requires "that a good-faith effort be made to obtain concurrence, which normally involves actual

contact with an opposing counsel or party."  *Murphy v. Birkett*, No. 10-11676, 2011 U.S. Dist.

LEXIS 136102, at *3 (E.D. Mich. Nov. 28, 2011) (citing, *inter alia*, Fed. R. Civ. P. 37(a)(1)).  A

Rule 37 movant must also comply with the Court's local rules, *Craigmyle*, 2012 U.S. Dist.

LEXIS 174300, at *8, which provide that a motion to compel must:

> (A)    *quote verbatim* or *attach copies of each deposition question, interrogatory, request for admission, or request for production* to which objection has been taken or incomplete response has been given; and,
> (B)    *include the response and the grounds assigned for the objection* (if not apparent from the objection), if any.

LR 26.1(b)(2) (emphasis added).  A litigant "may move to *compel disclosure*" where the other

party fails to disclose information required by Rule 26(a)[4] of the Federal Rules of Civil

---

[4] Rule 26(a) requires parties to disclose "cop[ies] . . . of all documents . . . that the disclosing party *has in its possession, custody, or control* and may use to support its claims or defenses." Fed. R. Civ. P.26(a)(1)(A)(ii) (emphasis added).

Procedure. Fed. R. Civ. P. 37(a)(3)(A) (emphasis added). "[T]he Federal Rules are designed to ensure that district courts remain firmly in control of those depositions and document productions involving nonparties located in their districts." *United States ex rel. Pogue v. Diabetes Treatment Ctrs. of Am., Inc.*, 444 F3d 462, 468 (6th Cir. 2006).

### b.    Analysis

In the instant case, Thompson's Rule 37 motion fails on its face for several reasons. First, the Government sought to obtain an affidavit of counsel from McAfee, regarding counsel McAfee provided to Thompson in the underlying criminal case, to inform the Government's response to Thompson's § 2255 Motion. (Mot. ¶ 5, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 15.) Typically, the attorney-client privilege would preclude the Government from obtaining such a statement. *See In re Lott*, 424 F.3d 446, 450 (6th Cir. 2005) ("the attorney-client privilege is a necessary foundation for the adversarial system of justice"). The Court granted the Government's request to waive McAfee's attorney-client privilege, but did not set a strict deadline by which McAfee must, or even should, have produced an affidavit of counsel. Rather, the Court ordered expressly that "McAfee . . . is hereby released from Attorney-Client Privilege, such that he is hereby *allowed to submit* an affidavit of counsel *or* other such documents as necessary for [the Government] to adequately respond to [Thompson's § 2255 Motion]." (Order, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 16 (emphasis added).) The Court also did not set a strict deadline by which the Government must or should respond to Thompson's second amended § 2255 Motion, but rather that "the United States be afforded up to and including thirty (30) days *after the filing of . . . McAfee's affidavit* in which to respond to [Thompson's § 2255 Motion]." (*Id.* (emphasis added).) Any deadline to respond to Thompson's § 2255 Motion, then, was predicated on the

permissive, as opposed to mandatory, language of the Court's August 13, 2014, order regarding McAfee's affidavit of counsel. Second, the Court necessarily could not compel the Government to furnish Thompson with a copy of an affidavit of counsel that it did not have in its possession, custody, or control. Third, Thompson has not served either the Government or McAfee with a request for production of documents pursuant to Rule 34.[5] Even if Thompson had served the Government or McAfee with a request for production of the affidavit of counsel, the Court has not granted Thompson leave for discovery.[6] Fourth, Thompson's Rule 37 motion neither demonstrates a good-faith effort to confer with or contact the Government to resolve its perceived non-responsiveness, nor complies with the formal requirements for a Rule 37 motion set forth in Fed. R. Civ. P. 37 and LR 26.1(b)(2). Fifth, the Government—*not Thompson*— sought to obtain McAfee's affidavit of counsel. Finally, notwithstanding the facial and substantive defects of Thompson's Rule 37 motion, the Government has since responded to Thompson's § 2255 Motion, attaching McAfee's affidavit of counsel to its response, and the issue of compelling the Government or McAfee to file McAfee's affidavit is therefore moot. (Resp., *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 24; McAfee Aff., *id.*, ECF No. 24-1.) For the foregoing reasons, Thompson's Rule 37 motion is DENIED AS MOOT. The Court turns next to consideration of Thompson's pending motions that bear substantively on the second amended § 2255 Motion.

---

[5] To obtain copies of documents, a party to litigation must serve a request for a copy of the document on the opposing party that describes "with reasonable particularity" the document requested. *See generally* Fed. R. Civ. P. 34; *see also* Rule 6(b), § 2255 Rules ("A party requesting discovery must provide reasons for the request. The request must also include any proposed interrogatories and requests for admission, and must specify any requested documents.").

[6] In the normal course of civil litigation, Thompson could file a request for document production without leave of the Court. A movant seeking relief under § 2255, however, must have the Court's leave to attempt to obtain discovery. *See* Rule 6(a), § 2255 Rules.

### 2. Motions to Amend Thompson's Second Amended § 2255 Motion, Supplement His Reply, and Amend His Reply

On April 30, 2015, Thompson filed a motion to amend his second amended § 2255 Motion by "remov[ing] all . . . claims/subclaims except" his claim for "ineffective assistance of counsel during plea negotiations" and his claim for "ineffective assistance of counsel for failure to object to the improper grouping of the guidelines and miscalculation of the guidelines." (Mot. to Amend Second Am. § 2255 Mot. at 1, *id.*, ECF No. 31.) Thompson also filed a third amended § 2255 Motion to reflect the changes sought. (Third Am. § 2255 Mot., *id.*, ECF No. 31-1.) On April 16, 2015, Thompson filed a supplement to his reply to the Government's response to his § 2255 Motion; the Court construes this filing as a motion to supplement. (Suppl. to Reply, *id.*, ECF No. 30.) On August 10, 2015, Thompson filed a motion to amend his reply and enclosed an additional memorandum of law in support of his reply. (Mot. to Suppl. Reply, *id.*, ECF No. 32.) On September 30, 2015, Thompson filed another motion to amend his reply, to which he attached such amended reply. (Mot. to Amend Reply, *id.*, ECF No. 34; Am. Reply, *id.*, ECF No. 34-1.) On June 27, 2016, Thompson filed another motion to supplement his amended reply as to his claim of ineffective assistance of counsel during plea negotiations. (Mot. to Suppl. Am. Reply, *id.*, ECF No. 37.) For the reasons set forth below, Thompson's motions to amend his second amended § 2255 Motion, and Thompson's motions to supplement his reply, are GRANTED.

#### a. Legal Standard for Rule 15 Motions to Amend Pleadings

Rule 15(a) provides, in pertinent part, that, if a party does not amend a pleading as a matter of course, "a party may [otherwise] amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "When 'justice so requires' is within the trial court's broad

range of discretion." *Hayden v. Ford Motor Co.*, 497 F.2d 1292, 1294 (6th Cir. 1974). When a movant seeks to amend after an adverse party has filed a responsive pleading, whether to grant or deny the motion is within a court's judicial discretion. *Willard Dairy Corp. v. Nat'l Dairy Prods. Corp.*, 309 F.2d 943, 946-47 (6th Cir. 1962).

Where a litigant moves to amend a previous pleading after the statute of limitations for the cause of action has expired,[7] Rule 15(c) ensures that "the new pleading is 'timely even though it was filed outside an applicable statute of limitations'" if the proposed amendment relates back to the original, timely-filed complaint. *Durand v. Hanover Ins. Grp.*, 806 F.3d 367, 374-75 (6th Cir. 2015) (quoting *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538, 541 (2010)). A proposed amendment properly relates back when "the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed. R. Civ. P. 15(c)(1)(B). A movant meets this standard "if there is an identity between the amendment and the original complaint with regard to the general wrong suffered and with regard to the general conduct causing such wrong." *Miller v. Am. Heavy Lift Shipping*, 231 F.3d 242, 250 (6th Cir. 2000) (quoting *Benco Plastics, Inc. v. Westinghouse Elec. Corp.*, 387 F. Supp. 772, 783 (E.D. Tenn. 1974)). "[A] party cannot amend a § 2255 petition to add a completely new claim after the statute of limitations has expired." *United States v. Clark*, 637 F. App'x 206, 209 (6th Cir. 2016) (alteration in original) (quoting *United States v. Thomas*, 221 F.3d 430, 436 (3d Cir. 2000)). "We assess motions to amend habeas petitions for whether they address the same 'common core of operative facts' as the initial petition." *Id.* (quoting *Mayle v. Felix*, 545 U.S. 644, 664 (2005)). While a court should freely grant leave generally, it

---

[7] The statute of limitations for petitions pursuant to 28 U.S.C. § 2255 is one year. *See* 28 U.S.C. § 2255(f). Therefore, the Court must consider whether Thompson's pending proposed amendments relate back to his original petition pursuant to Rule 15.

should not grant leave "when there has been 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.'" *Shane v. Bunzi Distribution USA, Inc.*, 200 F. App'x 397, 406 (6th Cir. 2006) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). A court must explain its decision to deny leave if it determines that leave should be denied. *Id.*

### b.    Analysis

In the instant case, the statute of limitations on Thompson's § 2255 Motion expired on August 12, 2014, one year and fourteen days[8] after the Sixth Circuit affirmed the Court's judgment in the underlying criminal case on July 29, 2013. (*See Thompson*, 531 F. App'x 549.) Thompson's April 30, 2015, motion to amend his second amended § 2255 Motion and his four motions in 2015 and 2016 to supplement or amend his reply thus arrive well after the expiration of the applicable limitations period. The April 30, 2015, motion to amend the second amended § 2255 Motion seeks to reduce the total number of discrete claims under which Thompson seeks relief to two:

> I am not attempting to raise any claim that was not previously before the [C]ourt. But instead to clarify [my] claims of *ineffective assistance of counsel during plea negotiations* and *ineffective assistance of counsel for failure to object to the improper grouping of the guidelines and miscalculation of the guidelines*. [sic] [I] would also like to *remove all other claims/subclaims except those mentioned above*. [I] understand[] that once these claims are removed[,] they will not be considered.

---

[8] The limitations period for Thompson's § 2255 Motion ran for one year after the judgment in the underlying conviction became final. *See* 28 U.S.C. § 2255(f)(1). A judgment in a criminal case becomes final on the last possible day a defendant could file a valid notice of appeal, which is fourteen days in this context. *See generally* Fed. R. App. P. 4(b)(1)(A)(i); *see also United States v. Ross*, 391 F. App'x 531, 533 (6th Cir. 2010). The Sixth Circuit affirmed Thompson's conviction on July 29, 2013, meaning the last possible day he could have filed a valid notice of appeal would have been August, 12, 2013. The limitations period began then, and expired a year later.

(Mot. to Amend Second Am. § 2255 Mot. at 1, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 31 (emphasis added).) Thompson's motions to supplement or amend his reply contain only memoranda of law in support of claims already before the Court. Because the issues presented in the motions arose out of the same common nucleus of operative facts—McAfee's representation of Thompson in the underlying criminal case—and there is a sameness between the proposed amendments and the second amended § 2255 Motion in that they all address Thompson's general alleged injury arising from McAfee's allegedly faulty representation of him, these claims properly relate back under Rule 15. Thompson does not purport to add a new claim or legal theory to his cause of action. As such, these proposed amendments do not unfairly prejudice the Government. Nothing in the record suggests that Thompson filed these motions in bad faith, after undue delays, or with dilatory motives. While Thompson has repeatedly amended his pleadings to add claims throughout these proceedings, these amendments simplify the cause of action, as Thompson expressly waives his right to proceed on the claims he has removed in his motion to amend his second amended § 2255 Motion.

For the foregoing reasons, Thompson's April 30, 2015, motion to amend his second amended § 2255 Motion and his April 16, August 10, September 30, 2015, and June 27, 2016, motions to supplement or amend his reply are GRANTED. The Court now turns to the merits of the claims in Thompson's third amended § 2255 Motion, which he attached to his April 30, 2015, motion. (Third Am. § 2255 Motion, *id.*, ECF No. 31-1.)

## B.     Relief Based on Ineffective Assistance of Counsel

The Court construes Thompson's third amended § 2255 Motion to assert two discrete grounds of ineffective assistance of McAfee's counsel: (1) failure to object[9] to the Court's allegedly improper grouping and enhancement of offenses, resulting in miscalculation of Thompson's sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), and (2) failure to correctly estimate Thompson's sentencing range under the Sentencing Guidelines during plea negotiations, resulting in Thompson's inadvertent rejection of a favorable plea agreement.[10]

### 1.     Legal Standard for Ineffective Assistance of Counsel Claims

A claim that ineffective assistance of counsel has deprived a movant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*,

---

[9] A claim of ineffective assistance of counsel for failure to object, construed literally, would be meritless in this case since Thompson repeatedly recognizes that McAfee raised oral and written objections relating to Thompson's sentencing. (*See, e.g.*, Fifth Mot. to Amend § 2255 Mot. at PageID 70, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 12 ("Counsel put forth objections but movant does not believe that they were properly articulated before the [C]ourt."); Mem. in Supp. of § 2255 Mot. at PageID 86, *id.*, ECF No. 13-1 ("filing late objections caused petitioner to object [at the plea hearing] without knowing how to articulate the objections[, or] the ramifications [of] objecting.").) Therefore, the Court construes Thompson's claim here more broadly to assert a failure to object sufficiently to allegedly improper grouping of offenses and enhancement of offenses, resulting in alleged miscalculation of Thompson's sentencing range under the Sentencing Guidelines. *See Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002) (identifying "failure to conduct any *meaningful* adversarial challenge" as an aspect of objectively unreasonable representation (emphasis added) (quoting *Groseclose v. Bell*, 130 F.3d 1161, 1169 (6th Cir. 1997))).

[10] Although Thompson's third amended § 2255 Motion sets out his claims as "Ineffective assistance of counsel for failure to object to the improper grouping and miscalculation of the guidelines" and "Ineffective assistance of counsel during plea negotiations resulting in the rejection of a plea deal" (Third Am. § 2255 Motion at 5-6, *id.*, ECF No. 31-1), the Court has reorganized them for purposes of analysis because the essence of Thompson's second asserted ground for relief appears to be thus: had McAfee correctly estimated Thompson's likely sentence using the Sentencing Guidelines while plea negotiations were ongoing, Thompson would not have rejected a plea agreement that would have resulted in a substantially lesser sentence than the one imposed by the Court post-judgment.

466 U.S. 668 (1984). *See Grant*, 72 F.3d at 506. To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 687-88.

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

*Harrington v. Richter*, 562 U.S. 86, 104 (2011) (citations omitted) (quoting *Strickland*, 466 U.S. at 689, 687).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[11] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.' Counsel's errors must be 'so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.'" *Richter*, 562 U.S. at 104 (citations omitted) (quoting *Strickland*, 466 U.S. at 693, 687); *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable

---

[11] "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant . . . ." *Id.* at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different.")

The two-part test stated in *Strickland* applies to challenges to guilty pleas based on the ineffective assistance of counsel. *Hill v. Lockhart*, 474 U.S. 52, 57-58 (1985). "Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Id.* at 56 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). "[T]o satisfy the 'prejudice' requirement, the defendant must show that there is a reasonable probability that, but for counsel's errors," the outcome of the plea process would have been different. *Id.* at 59; *see also Padilla v. Kentucky*, 559 U.S. 356, 372 (2010) ("[T]o obtain relief on this type of claim, a petitioner must convince the court that a decision to reject the plea bargain would have been rational under the circumstances.").

### 2. Alleged Miscalculation of Thompson's Sentencing Range

#### a. Failure to object to the Court's allegedly improper grouping of offenses

In his first ground of ineffective assistance of counsel, Thompson alleges that McAfee failed to object to the Court's grouping of offenses under U.S.S.G. §3D1.2(c) when sentencing him. (Third Am. § 2255 Motion at 5, *Thompson v. United States*, No. 2:13-cv-02737 (W.D. Tenn.), ECF No. 31-1.) Thompson also alleges that McAfee failed to object to the Court's use of a firearm discharge as an enhancement to the robberies because "Petitioner was also convicted under [18 U.S.C. §] 924(c) for the same firearm and [§] 924(c) covers that conduct . . . and [A]pplication [N]ote 4 to [U.S.S.G. §] 2K2.4 says not to apply the enhancement." (*Id.*)

Thompson claims that only thirteen minutes elapsed between 8:35 a.m., the time he began the robbery of Trust One Bank (Count One) and 8:48 a.m., the time he began the robbery

of Cadence Bank (Count Three).  (Fifth Mot. to Amend § 2255 Mot. at PageID 70, *id.*, ECF No. 12.)  The robbery spree was ostensibly one course of criminal conduct for which "all counts involving substantially the same harm []should be grouped together for purposes of determining the offense level," and the Court thus failed to group all Counts together, according to Thompson.  (Reply at 3-4, *id.*, ECF No. 27 (citing U.S.S.G. § 3D1.2(c)).)  For the proposition that Count Three should have been grouped with Counts One, Four, and Five, Thompson relies on *United States v. Reyes-Perez*.  (*Id.* at 4 (citing 239 F. App'x 222, 227 (6th Cir. 2007)).)

Thompson concludes that McAfee's failure to object to the Court's grouping of Counts One, Four, and Five separately from Count Three was harmful to him in that it resulted in the Court imposing a much heavier sentence than the "78-97 months (plus mandatory min[imum])" the Court ostensibly should have imposed.  (Fifth Mot. to Amend § 2255 Mot. at PageID 71, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 12.)  For this proposition, Thompson relies on *United States v. Washington*.  (Reply at 4, *id.*, ECF No. 27 (quoting 619 F.3d 1252, 1260 (10th Cir. 2010)).)  The Tenth Circuit held in *Washington* that

> knowledge about the structure and mechanics of the sentencing guidelines and the sentencing process will often be crucial to advising a defendant about how to conduct himself through the sentencing process. Accordingly, we hold that a defendant may prevail on the first prong of the *Strickland* test if he/she can establish that counsel *failed to understand the basic structure and mechanics of the sentencing guidelines* and was therefore incapable of helping the defendant to make reasonably informed decisions throughout the criminal process.

619 F.3d at 1260 (emphasis added).

Section 3D1.2 of the Sentencing Guidelines provides, in pertinent part, that:

> All counts involving substantially the same harm shall be grouped together into a single Group.  Counts involve substantially the same harm within the meaning of this rule . . . [w]hen one of the counts embodies *conduct that is treated as a specific offense characteristic in . . . the guideline applicable to another of the counts*.

U.S.S.G. § 3D1.2(c) (emphasis added).  Note 5 to U.S.S.G. § 3D1.2(c) states, in relevant part, that:

> Subsection (c) provides that when conduct that represents a separate count . . . is also a specific offense characteristic in or other adjustment to another count, the count represented by that conduct is to be grouped with the count to which it constitutes an aggravating factor.  This provision prevents "double counting" of offense behavior.  Of course, this rule applies only if the offenses are closely related . . . .  On the other hand, use of a firearm in a bank robbery and unlawful possession of that firearm are sufficiently related to warrant grouping of counts under this subsection.

U.S.S.G. § 3D1.2(c) cmt. n.5 (2011).  The guideline for robbery includes, *inter alia*, a specific offense characteristic "[i]f a firearm was discharged, . . . otherwise used, . . . [or] brandished or possessed."  U.S.S.G. § 2B3.1(b)(2)(A)-(C).  Because Thompson used a firearm, namely, the Hi-Point rifle, in the commission of the robbery of Trust One Bank, Counts One, Four, and Five involved "substantially the same harm," and the Probation Office validly grouped Thompson's possession of the Hi-Point rifle and of several rounds of ammunition in violation of 18 U.S.C. § 922(g) with the robbery of Trust One Bank, pursuant to U.S.S.G. § 3D1.2(c).

Thompson also asserts that the Court should have grouped Counts One, Three, Four, and Five.  (*See* Reply, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 27 at 7.)  The Court finds that such grouping would not be warranted.[12]  Thompson's

_____

[12] Thompson appears to assert that, under U.S.S.G. § 3D1.2(c), because the same conduct that resulted in an attempted murder cross-reference pursuant to U.S.S.G. §§ 2X1.1 and 2A2.1 for Counts One, Four, and Five, also enhanced his offense level for Count Three, the four counts should have been grouped together.  (Am. Reply at 11, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 34-1.)  Count Three, however, is not a count to which U.S.S.G. § 3D1.2(c) would apply; it does not "embod[y] conduct that is treated as a specific offense characteristic in" the other count, U.S.S.G. § 3D1.2, because no specific offense characteristics were applied to Counts One, Four, and Five.  (*See* PSR ¶¶ 17-18.)  Similarly, U.S.S.G. § 3D1.2(c) is also inapplicable to Counts One, Four, and Five insofar as they relate to Count Three.  (*See generally id.* ¶¶ 15-31.)  Furthermore, as the Court found during sentencing, Thompson committed two distinct robberies, such that the other provisions of U.S.S.G. § 3D1.2, requiring counts to involve the same victim or ongoing or continuous behavior, would not be

reliance on *Reyes-Perez* is misplaced because the Sixth Circuit in that case held that the separation of counts was proper when the district court did not use one count to enhance the others. 239 F. App'x at 227. In Thompson's criminal case, the Court also did not use Count Three to enhance Counts One, Four, and Five during sentencing, *see supra* n.13; thus the Court's separation of Count Three from the other grouped counts was proper.

In the instant case, McAfee objected in writing before sentencing to perceived double counting of Thompson's firearm charges. (Obj. to PSR at PageID 74, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv (W.D. Tenn.), ECF No. 53.) McAfee also raised an objection to perceived double counting orally at sentencing. (Sentencing Hr'g Tr. at 6:11-25, 7:22-8:6, June 20, 2012, *id.*, ECF No. 67.) McAfee noted at sentencing that he had to consult with several other attorneys in an attempt to discover a viable objection to the PSR's recommended sentencing range for Thompson. (*Id.* at 5:10-13.) The Court considered McAfee's written and oral objections, entertained oral argument from McAfee and the Government on the grouping issue, and overruled McAfee's objections based on discussion at oral argument and on *United States v. Conner*, 306 F. App'x 978 (6th Cir. 2009), a controlling precedent that McAfee acknowledged, both in his written objection and at sentencing, undercuts any objection he may have had to the Court's grouping of the Counts when calculating Thompson's sentencing range. (*See id.* at 7:1-16:18.) Thompson's reliance on *Washington* is thus misplaced because he has not established that McAfee "failed to understand the basic structure and mechanics" of the Sentencing Guidelines. 619 F.3d at 1260.

---

relevant. (*See* Sentencing Hr'g Tr. at 14:15-16, June 20, 2012, *United States v. Thompson*, No. 2:10-20010-JPM (W.D. Tenn.), ECF No. 67; Sentencing Hr'g Tr. at 136:24-137:16, July 19, 2012, *id.*, ECF No. 68.) Therefore, the Court's separation of Count Three from Counts One, Four, and Five was proper.

"Counsel is not required . . . to raise frivolous defenses or arguments to avoid a charge of ineffective representation." *Chapman v. United States*, 74 F. App'x 590, 593 (6th Cir. 2003) (citing *Krist v. Foltz*, 804 F.2d 944, 946-47 (6th Cir. 1986)). Accordingly, Thompson fails to establish that McAfee's alleged failure to object sufficiently to the Court's grouping of Thompson's counts was deficient under *Strickland*. The Court next considers Thompson's allegation that McAfee failed to object to improper enhancement of Thompson's offenses during sentencing.

### b. Failure to object to the Court's allegedly improper enhancement of offenses

With respect to the Court's enhancements of his offenses, Thompson argues that the Court should not have applied a weapon enhancement to either Counts One or Three because 18 U.S.C. § 924(c) already provides a statutory minimum sentence of ten years imprisonment consecutive to any other sentence in the case, and the Sentencing Guidelines preclude the Court from applying such an enhancement in this circumstance. (Reply at 6, *id.*, ECF No. 27; *see also* Third Am. § 2255 Motion at 5, *id.*, ECF No. 31-1.) Thompson relies on *United States v. Hazelwood*, in which the Sixth Circuit held that the content of U.S.S.G. § 2K2.4 Application Note 4 "preclude[s] the use of enhancements for *any* firearm-related conduct related to an underlying offense when a defendant is also convicted under § 924(c)." (Reply at 6, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 27 (emphasis added) (quoting 398 F.3d 792, 799-800 (6th Cir. 2004)).)

Application Note 4 to U.S.S.G. § 2K2.4 Use of Firearm, Armor-Piercing Ammunition, or Explosive During or in Relation to Certain Crimes states, in pertinent part, that:

> If a sentence under this guideline is imposed in conjunction with a sentence for an underlying offense, do not apply any specific offense characteristic for possession, brandishing, use, or discharge of an explosive or firearm when

> determining the sentence for the underlying offense . . . .  *[I]f a defendant is convicted of two armed bank robberies, but is convicted under 18 U.S.C. § 924(c) in connection with only one of the robberies, a weapon enhancement would apply to the bank robbery which was not the basis for the 18 U.S.C. § 924(c) conviction.*

U.S.S.G. § 2K2.4 cmt. n.4 (emphasis added).  Thompson was convicted of two armed bank robberies, and it appears that Count Two, the conviction under 18 U.S.C. § 924(c), applied only to Count One, the robbery of Trust One Bank, and not to Count Three, the robbery of Cadence Bank, because a weapon enhancement was applied only to Count Three.  (*See* PSR ¶¶ 26.) While McAfee argued that Count Two could apply to either Count One or Count Three, and thus, there could be risk of "double-counting" against Thompson, he also conceded that there was precedent to apply a weapon enhancement to one count so long as the enhancement was not applied to another count related to a § 924(c) conviction.  (*See* Obj. to PSR at PageID 73-74, *United States v. Thompson*, No. 2:10-cr-20010-JPM-dkv (W.D. Tenn.), ECF No. 53 (citing *Conner*, 306 F. App'x at 983); Sentencing Hr'g Tr. 6:11-16, June 20, 2012, *id.*, ECF No. 67.) McAfee attempted to distinguish Thompson's case from *Conner*, but the Court did not agree. (*See* Sentencing Hr'g Tr. 6:16-16:20, June 20, 2012, *id.*, ECF No. 67.)

Although McAfee's objection to the Court's allegedly improper weapon enhancement of Counts One and Three was weak in light of *Conner* and ultimately unsuccessful, it was objectively reasonable and thus not deficient under *Strickland*.  As such, there is no basis on which to grant Thompson's § 2255 Motion as to this particular ground of ineffective assistance of counsel.

### 3.    Alleged Failure During Plea Negotiations

In his second ground of ineffective assistance of counsel, Thompson alleges that, had McAfee correctly estimated Thompson's likely sentence under the Sentencing Guidelines, Thompson "would have accepted the plea deal."  (Third Am. § 2255 Motion at 6, *Thompson v.*

*United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 31-1.) Instead, McAfee's estimates "grossly underestimated Petitioner's exposure . . . . Counsel failed to tell Petitioner that a[n] attempted murder cross-reference[13] may apply which increases the exposure for that count over the max." (*Id.*) Thompson relies on *Griffin v. United States* for the proposition that a defendant need not establish by objective evidence his claim that he would have accepted a plea agreement but for deficient representation. (*See* Am. Reply at 24, *id.*, ECF No. 34-1 (citing 330 F.3d 733, 737 (6th Cir. 2003)).) The Court finds there is no basis on which to grant relief as to this ground of ineffective assistance of counsel.

"A criminal defendant has a right to expect at least that his attorney will . . . explain the sentencing exposure the defendant will face as a consequence of exercising each of the options available." *Smith v. United States*, 348 F.3d 545, 553 (6th Cir. 2003). Defense counsel cannot sufficiently explain sentencing exposure to a defendant without "completely exploring the ranges of penalties under likely guideline scoring scenarios, given the information available to the defendant and his lawyer at the time." *Id.* "A guilty plea is valid if it is entered knowingly, voluntarily, and intelligently by the defendant." *United States v. Dixon*, 479 F.3d 431, 434 (6th Cir. 2007); *see also Brady v. United States*, 397 U.S. 742, 748 (1970). "[I]t is well settled that a defense attorney's erroneous calculation and prediction of the sentencing guidelines is not a basis for setting aside a guilty plea." *United States v. Hicks*, 4 F.3d 1358, 1363 n.3 (6th Cir. 1993)). "Unfulfilled subjective expectations of counsel and a defendant regarding the possible length of sentence do not render an otherwise valid plea involuntary." *United States v. Ford*, 15 F. App'x

---

[13] Although Thompson previously argued that the attempted murder cross-reference was applied incorrectly to him, (*see, e.g.*, Second Mot. to Amend § 2255 Mot., *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 6), Thompson has withdrawn this theory of ineffective assistance of counsel. (*See* Mot. to Amend Second Am. § 2255 Mot. at PageID 194, *id.*, ECF No. 31.)

303, 308 (6th Cir. 2001) (citing *Spinelli v. Collins*, 992 F.2d 559, 561 (5th Cir. 1993); *Stout v. United States*, 508 F.2d 951, 953 (6th Cir. 1975)). A defendant's "'mere allegation' that he would not have pled guilty but for counsel's errors is ultimately insufficient to entitle him to relief under § 2255." *Salas v. United States*, Nos. 2:06-CR-18, 2:09-CV-223, 2012 WL 4052378, at *8 (E.D. Tenn. Sept. 13, 2012) (citing *Missouri v. Frye*, 132 S. Ct. 1399, 1408-09 (2012)).

Neither the Government nor McAfee disputes that McAfee's estimates of Thompson's likely sentencing range "were less than what the [Presentence Investigation Report] ultimately yielded." (McAfee Aff. at PageID 168, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 25; *see* Resp. at 17, *id.*, ECF No. 24.) The underestimation of Thompson's sentencing exposure, however, is not a sufficient justification for relief pursuant to 28 U.S.C. § 2255 where a defendant has voluntarily pleaded guilty. *See Hicks*, 4 F.3d at 1363 n.3. Even if McAfee's failure to correctly estimate Thompson's likely sentencing range could serve as the basis for sentencing relief, Thompson would also need to establish that he would have accepted a plea agreement that was ostensibly more favorable than the sentence he ultimately received. The greater weight of the evidence in the record suggests that the Government never offered Thompson a valid plea agreement, notwithstanding that McAfee zealously attempted to obtain one for his client. To wit, McAfee avers that "[a]s the guilty plea [hearing] loomed, the 15 year guilty plea agreement under Rule 11(c)(1)(c) [that McAfee had been negotiating with the Government] had not been approved." (McAfee Aff. at PageID 168, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 25.) McAfee also submits that, despite his advice that Thompson had little basis on which to appeal any issues, Thompson insisted that he would not accept a plea agreement because "he did not want to

waive his [right of] appeal." (*Id.*)[14] Thompson asserts, however, that he decided to plead guilty to all Counts because "there was only a few years['] difference in between the plea and the estimate that [McAfee] gave [him]." (Thompson Aff. at 1-2, *id.*, ECF No. 29.)

Thompson's reliance on *Griffin* is misplaced because in *Griffin*, defense counsel failed to notify the defendant altogether that the Government had offered a plea agreement, which satisfied the first prong of *Strickland*. 330 F.3d at 737-38. McAfee not only attempted to obtain a plea agreement for Thompson through negotiation with the Government, but counseled Thompson to accept an agreement if and when the Government approved one in light of sentencing range estimates he had made, albeit in conjunction with the Probation Office and outside counsel. (McAfee Aff. at PageID 167-68, *Thompson v. United States*, No. 2:13-cv-02737-JPM-dkv (W.D. Tenn.), ECF No. 25; Resp. at 16-17, *id.*, ECF No. 24.)

Thompson pleaded guilty to all five Counts before the Magistrate Judge on October 20, 2011. (*See* Order, *United States v. Thompson*, No. 2:10-cr-20010-JPM (W.D. Tenn.), ECF No. 41.) The plea colloquy indicates that the guilty plea was knowing and voluntary:

**Q:**    Okay. Now have you received a copy of the indictment in this case?

**A:**    Yes, ma'am.

**Q:**    Okay. Have you had an adequate time to review the charges with Mr. McAfee?

**A:**    Yes, ma'am.

**Q:**    And are you fully satisfied with the counsel, representation, and advice given to you by Mr. McAfee in this case?

**A:**    Yes, ma'am.

. . . .

---

[14] The Court notes that Thompson did file a notice of appeal on July 23, 2012. (Notice of Appeal, *United States v. Thompson*, No. 2:10-cr-20010-JPM (W.D. Tenn.), ECF No. 62.)

Q:     Do you understand, sir, that you have a right to plead not guilty to the charge[s] against you and persist in that plea?

A:     Yes, ma'am.

Q:     Do you understand that under our law you are presumed innocent until proven guilty, and that our government must prove your guilt beyond a reasonable doubt?

A:     Yes, ma'am.

Q:     Do you understand that you have a constitutional right to a trial by jury, the right to assistance of counsel[?]  And that at trial you have the right to put on witnesses and cross examine any witnesses that the government might put on[?]  And that you would have a right to testify, and that if you chose to [do] that you could not be compelled to testify?

A:     Yes, ma'am.

. . . .

Q:     Do you understand that by pleading guilty there will not be a trial of any kind and that you will be giving up these rights as I have just described them?

A:     Yes, ma'am.

. . . .

Q:     All right.  Have you had an opportunity to discuss the potential penalties with your attorney, so as I understand it you would then be pleading guilty to all five counts in the indictment[?]

A:     Yes, ma'am.

Q:     And you have had an opportunity to discuss that with Mr. McAfee and understand all of the ramifications of that?

A:     Yes.

Q:     Okay.  All right.  Has anyone threatened you in any way to persuade you to – make a guilty plea?

A:     No, ma'am.

Q:     Okay.  All right.  Has anyone attempted to force you to plead guilty?

**A:**    No, ma'am.

**Q:**    Has anyone threatened you?

**A:**    No, ma'am.

**Q:**    And are you pleading guilty of your own free will?

**A:**    Yes, ma'am.

**Q:**    Are you pleading guilty because you are, in fact, guilty of the offenses as charged in the counts of the indictment?

**A:**    Yes, ma'am.

. . . .

**Q:**    Do you understand the potential penalties for each of the counts of the indictment?

**A:**    Yes, ma'am.

**Q:**    Okay.  Knowing all of these things, do you understand what can happen to you as a result of this guilty plea?

**A:**    Yes, ma'am.

**Q:**    Under the Sentencing Reform Act of 1984 the United States Sentencing Commission has issued guidelines for judges to follow in determining the sentence in a criminal case.

        Have you and Mr. McAfee had an opportunity to discuss the guidelines and how they apply in your case?

**A:**    Yes, ma'am.

**Q:**    Okay.  Do you understand that if the guilty plea is accepted by the district court, the district judge will not be able to sentence you until a Presentence Report has been completed and that you and the government will both have an opportunity to challenge the reported facts and the proposed application of the guidelines in the Presentence Report?

**A:**    Yes, ma'am.

**Q:** Do you understand that the sentence ultimately imposed by the district court may be different from any estimate of the sentence that your counsel, government counsel, or anyone else may have given to you?

**A:** Yes, ma'am.

**Q:** Do you understand that after your initial advisory guideline range has been determined that the district judge has the authority in some circumstances to depart either upward or downward from that range?

**A:** Yes, ma'am.

. . . .

**Q:** All right. Very good. We've reviewed your rights, the charges against you, the penalties that are available in this case and the government's proof if the case were to go to trial.

Having heard all of this, how do you wish to plead to the counts of the indictment?

**A:** Guilty.

(Change of Plea Hr'g Tr. at 9:2-19, Oct. 20, 2011, *United States v. Thompson*, No. 2:10-cr-20010-JPM (W.D. Tenn.), ECF No. 66.)

In light of the record in the underlying criminal case, the Court finds that Thompson has failed to establish that McAfee's counsel was deficient under the first prong of the *Strickland* test. As such, there is no basis on which to grant Thompson's § 2255 Motion as to this ground of ineffective assistance of counsel.

### 3. Conclusion

The Court finds that Thompson is not entitled to relief on either of the issues raised in his third amended § 2255 Motion. Accordingly, his § 2255 Motion is DENIED.

### C. Remaining Motions Before the Court

#### 1. Motion for an Evidentiary Hearing and Appointment of Counsel pursuant to the Section 2255 Rules

Pursuant to Rule 8, § 2255 Rules, Thompson filed a motion for evidentiary hearing and appointment of counsel pursuant to 18 U.S.C. § 3006A on April 3, 2015. (Mot. for Evidentiary Hr'g & Appointment of Counsel, *id.*, ECF No. 28 at PageID 184.) Because Thompson's § 2255 Motion fails as a matter of law, the motion is DENIED AS MOOT.

#### 2. Motion Requesting Leave for Discovery pursuant to the Section 2255 Rules

On December 23, 2015, Thompson filed a motion requesting leave for discovery, pursuant to Rule 6(a), § 2255 Rules, requesting that he be permitted to obtain documentation pertaining to communications between McAfee and the Government's trial counsel, a proposed plea agreement at the trial phase, and the administrative approval of such a plea agreement. (Mot. Requesting Leave for Disc., *id.*, ECF No. 35.) Because Thompson's § 2255 Motion fails as a matter of law, this motion is DENIED AS MOOT.

## IV. APPEAL ISSUES

Twenty-eight U.S.C. § 2253(a) requires the district court to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue(s) that satisfy the required showing. 28 U.S.C. § 2253(c)(3). A "substantial showing" is made when the movant demonstrates "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve

encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). "[A] COA does not require a showing that the appeal will succeed." *Miller-El*, 537 U.S. at 337 ("[A] court of appeals should not decline the application for a COA merely because it believes the applicant will not demonstrate an entitlement to relief."); *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011) (same). Courts should not issue a COA as a matter of course. *Miller-El*, 537 U.S. at 337 ("Our holding should not be misconstrued as directing that a COA always must issue.").

The issues raised in Thompson's § 2255 Motion are meritless for the reasons previously stated. Because any appeal by Thompson on the issues raised in his § 2255 Motion does not merit review, the Court DENIES a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. §§ 1915(a)-(b), does not apply to appeals brought under § 2255. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Federal Rule of Appellate Procedure 24(a). *Id.* at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). Rule 24(a) also provides, however, that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a)(3)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED,

pursuant to Federal Rule of Appellate Procedure 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal *in forma pauperis* is DENIED.[15]

**IT IS SO ORDERED**, this 4th day of August, 2016.


/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE

---

[15] If Thompson files a notice of appeal, he must also pay the full $505 appellate filing fee or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.